UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AMY HUBER,**          **Plaintiff,**<br><br>**v.**<br><br>**GERHARD HUBER, HUBER INVESTMENTS LIMITED, TRIDENT TRUST COMPANY LIMITED, TRIDENT DIRECTOR SERVICES LIMITED, and STRATEGIC MANAGEMENT LIMITED,**          **Defendants.** | **Civil Action No.: 20-cv-12152-NMG** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF THE COURT'S DECEMBER 16, 2020 ORDER**

NOW COMES Plaintiff Amy Huber and respectfully requests that this Court reconsider its December 16, 2020 Order (the "Order"), in which it chose not to exercise jurisdiction, *sua sponte*, over the Plaintiff's claims and not to rule on Plaintiff's *ex parte* motions (*see* ECF Nos. 8 and 10). This case should not be dismissed based on the relevant forum selection clause, because the clause does not limit the case to be heard only in Massachusetts state courts. Alternatively, the case should not be dismissed due to *forum non conveniens* (even if the forum selection clause is interpreted as requiring the case be heard in Massachusetts state courts), as this result would be unreasonable and unjust.

**BACKGROUND**

Plaintiff Amy Huber filed her Verified Complaint on December 2, 2020, which included claims for breach of contract against her ex-husband and his various agents (all foreign entities), as well as a claim for conversion. She then filed a motion for attachment and a motion for a

1

temporary restraining order (*ex parte*).  The Court *sua sponte* dismissed the case on December 17, 2020, and denied the aforementioned motions as moot, relying on its interpretation of the relevant agreement's forum selection clause in accordance with case law.  Service of process was effected on Defendant Huber Investments Limited in accordance with The Hague Convention (in the British Virgin Islands) on December 4, 2020.  Defendant Hubert Investment Limited's attorneys[1] reached out to the undersigned on December 22, 2020 seeking an extension for its responsive pleadings, but the undersigned notified the Defendants that the case had been dismissed *sua sponte*.[2]  The corporate-defendants' attorneys in the United Kingdom have only agreed to keep the subject funds, see Verified Complaint and ECF No. 8, in escrow until January 12, 2021.  To date, Defendant Gerhard Huber has yet to respond to any correspondence and presumably is still in hiding.

## ANALYSIS
### Standard

The Federal Rules of Civil Procedure do not explicitly provide for a motion for reconsideration, but courts interpret such motion as being under Fed. R. Civ. P. Rules 59(e) or 60.  A motion for reconsideration is appropriate "if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).  This motion is made under Fed. R. Civ. P. 60(b)(1 and 6), as Plaintiff's grounds for relief from the Order is based on errors of both law and omission of relevant facts.

---

[1] Attorney Jonathan Sablone of DLA Piper LLP (US) represents Defendants Huber Investments Limited, Trident Trust Company Limited, Trident Director Services Limited, and Strategic Management Limited.
[2] Undersigned Counsel provided Attorney Jonathan Sablone with a copy of the December 16, 2020 Order, and will provide a courtesy copy of this memorandum and its related motion after it is filed.

**The Court erred in its forum selection clause interpretation.**

The Order erred, in its application of the caselaw cited therein, and in its interpretation of the Separation Agreement's (Sep. Agmt.) forum selection clause.  The Court correctly cited a portion of the Sep. Agmt.'s forum section clause:

> the courts of Massachusetts shall have exclusive jurisdiction (both subject matter and personal jurisdiction) relative to any disputes or other matters arising under or related to this Agreement so long as one or both parties resides in Massachusetts.

ECF No. 12 at 2, and ECF No. 11-1 at 32 (Sep. Agmt.).  The Court relied on two cases for its contention that "Courts in this Circuit have interpreted the phrase 'courts of Massachusetts,' when used in forum selection clauses, to refer to Massachusetts state courts only," ECF No. 12 at 2,  and not courts within the geographical boundaries of the Commonwealth of Massachusetts.  However, neither case the Court relied on supports its conclusions.

**_LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp._**

The First Circuit analyzed a forum selection clause which read:

> The Agreement . . . shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, of the Commonwealth of Massachusetts.

_LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp._, 739 F.2d 4 (1st Cir. 1984).  The First Circuit held "the phrase 'courts _of_ Massachusetts' (emphasis in original) could mean all the courts physically within the state _or_ only those courts that trace their origin to the state. _i.e._ the Massachusetts state courts."  _Id._ at 7-8 (emphasis added).  In _LFC Lessors_, the First Circuit applied this to an agreement which included a choice of law and forum selection clause within the same sentence, to be a forum selection clause which mandated that the dispute be brought in the state courts.  However, the _LFC Lessors_ holding is inapplicable herein, and reliance on the same was done in error.  First, the relevant language in the _LFC Lessors_ agreement specifically

3

says the courts of the "Commonwealth of Massachusetts," *supra*, not the "courts of Massachusetts," like the Sep. Agmt.  Second, in *LFC Lessors,* the First Circuit's holding was based on the parties' intended meaning of the word "of," when used in a contract term which included both choice of law and forum selection provisions.  *See id*. at 8-9.  The Court determined that "of the Commonwealth of Massachusetts," was intended by the parties to refer to both the choice of law and forum selection provisions and "that the intended meaning of the word 'of' in this context must be the meaning that is appropriate for both [provisions]," *id.* at 8, because, "in accordance with the law physically within the state" *id*. at 9, is nonsensical.   The First Circuit held "the word 'of' as it appears in the phrase in question must have been intended to restrict the meaning of both 'law' and 'courts' to those that trace their origin to the state," *id*.  Thus, the *LFC Lessors* holding cannot be relied on for the Order's interpretation (courts of Massachusetts refer to Massachusetts state courts only).  The *LFC Lessors* holding is not a bright line rule; rather, it was decided after the First Circuit analyzed the intention of the parties, therein.

### R. E. Moulton, Inc. v. RAC Assocs., LLC

Furthermore, the Order relied on a second case interpreting a forum selection clause which contained the following language: "in any court of the Commonwealth of Massachusetts." *R. E. Moulton, Inc. v. RAC Assocs., LLC*, 2009 U.S. Dist. LEXIS 114255, at *1-2 (D. Mass. 2009).  Once again, the Sep. Agmt. herein is distinct from the language within *R. E. Moulton* agreement, as it does not restrictively state "courts of the Commonwealth of Massachusetts;" but rather the broader, "courts of Massachusetts."  Citing *LFC Lessor*, the court reiterated that the phrase "'courts of Massachusetts' could mean all the courts physically within the state *or* only those courts that trace their origin to the state;" *id*. at 3 (emphasis added); but that "courts of the

4

Commonwealth of Massachusetts" could mean only those courts that 'trace their origin' to the Commonwealth," *id*. at 4.  The *R. E. Moulton* court was persuaded in part by the fact that both the choice of law and forum selection clauses, albeit separate unlike in *LFC Lessor*, used the same language 'of the Commonwealth of Massachusetts,' which "sensibly reflect[ed] the intent of the parties." *Id.* at 5.

Thus, the Order which states in relevant part, that "Courts in this Circuit have interpreted the phrase 'courts of Massachusetts,' when used in forum selection clauses, to refer to Massachusetts state courts only rather than all courts within the geographical boundaries of the Commonwealth" ECF No. 12 at 2, was in error.  Simply put, the First Circuit did not hold this; rather, it held that "[t]he phrase 'courts *of* Massachusetts' (emphasis in original) could mean all the courts physically within the state or only those courts that trace their origin to the state," *LFC Lessors*, at 7-8, and that it is the intent of the parties that is the deciding factor as opposed to a bright line rule.  Both the cases relied on in the Order had the same outcome, but the decisions were based on the intent of the parties after analyzing the relevant language within the agreements.

The Order treated the First Circuit's holding in *LFC Lessors* as bright line rule and failed to address what the parties intended within the Sep. Agmt, herein.  Both cases relied on within the Order analyzed the language of both the choice of law and forum selection clauses in order to determine the parties' intent of the use of the word "of" within the latter.  The Order however failed to even mention the choice of law clause within the Sep. Agmt.  The Order failed to distinguish between the phrases 'courts of Massachusetts' and 'courts of the Commonwealth of Massachusetts,' despite the referenced case law's holdings on the relevant phrase.

Notably, the Sep. Agmt.'s forum selection clause does not say, 'the courts of the Commonwealth of Massachusetts;" rather, it states "courts of Massachusetts," ECF No. 11-1 at 32.  In keeping with the *LFC Lessors* holding, the aforementioned Sep. Agmt.'s phrase, could be "a term of sovereignty or simply a term of geography,"  LFC at 6, but the parties' intent is the real deciding factor.  The Sep. Agmt. choice of law clause says:

> This Agreement has been executed or completed in Massachusetts and is a Massachusetts contract, and all matters affecting its interpretation and enforcement and the rights of the parties hereunder shall be governed by the laws of the Commonwealth of Massachusetts.

ECF No. 11-1 at 31.  Clearly the parties to the Sep. Agmt. intended the terms used in the choice of law and forum selection clause to be different, the former being 'a term of sovereignty' and the latter 'simply a term of geography,' *see LFC Lessor at 6-9*.  The distinction within the Sep. Agmt. makes all the sense in the world when looking at its contents, which include numerous offshore entities and assets which are subject to its provisions, thus it is comes at no surprise that the parties envisioned the possibility of filing an action in D. Mass. under diversity jurisdiction, applying the laws of the Commonwealth of Massachusetts.

**Alternatively, enforcement of the forum selection clause is unreasonable and unjust.**

If this court disagrees with the Plaintiff's interpretation of the forum selection clause amidst the backdrop of the cited First Circuit law, the court should nevertheless exercise its jurisdiction over this case because the alternative is unreasonable and unjust.  Even a mandatory forum-selection clause does not in fact divest a court of jurisdiction that it otherwise retains.  *See M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 12 (1972)* ("No one seriously contends . . . that the forum-selection clause 'ousted' the District Court of jurisdiction"); *LCF Lessors*, at 6 ("Such a provision does not oust the jurisdiction of the courts").  Rather, "[the forum selection clause]

merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction." *Id.* "Exclusive jurisdiction" in this context thus refers to the intent of the parties rather than the actual power of the court. This court's decision to dismiss this case, *sua sponte*, has benefitted Defendant Gerhard Huber (one of the two *signatory* parties to the Sep. Agmt.) who has flouted his responsibilities therein whilst hiding out somewhere in the biggest city in the world (Tokyo[3]). "*Sua sponte* dismissals, which by definition are entered on the court's own initiative and without advance notice or an opportunity to be heard, are disfavored." *See González–González v. United States*, 257 F.3d 31, 36–37 (1st Cir. 2001). There is considerable prejudice to the Plaintiff because she was not given an opportunity to be heard and Defendant Gerhard Huber will be able to retain hundreds of thousands of dollars he and the remaining Defendants owe to Plaintiff. This result would be based on a technicality (which, as argued *supra* is far from an enforceable provision under First Circuit law), within the Sep. Agmt. which he has materially and completely breached.

## CONCLUSION

For the reasons provided herein, and within the Verified Complaint and ECF Nos. 8 and 10, the Court should grant this request, rule on the *ex parte* motions and allow the Plaintiff an opportunity to effect service of process on Defendant Gerhard Huber and for the remaining defendants to file their responsive pleadings.

---

[3] *See* Reader's Digest, *The 20 Largest Cities in the World Ben & Jerry's Homemade Ice Cream*, https://www.rd.com/list/these-are-the-most-populated-cities-on-earth/ (last visited January 4, 2021).

RESPECTFULLY SUBMITTED January 4, 2021


AMY HUBER
By her counsel,

*/s/ Liam T. O'Connell*
Liam T. O'Connell, Esq.
BBO # 694477
Farrell Smith O'Connell
46 Middle Street, Second Floor
Gloucester, MA 01930
(978) 744-8918
(978) 231-8303
loconnell@fsofirm.com


*Certificate of Service*
I certify there has been
no appearance by Claimants
so there is no one to serve.
However, a courtesy copy
has been served on Atty
J. Sablone (Corporate Defendants)
on 1/6/2021, *via* email.

*/s/ Liam T. O'Connell*
Liam T. O'Connell